N THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| Total Quality Logistics, | : | |
| --- | --- | --- |
| | : | Case No. 1:09-cv-221 |
| Plaintiff, | : | |
| | : | Chief Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER GRANTING MOTION TO |
| Cavendish Farms, Inc., *et al.*, | : | DISMISS |
| | : | |
| Defendants. | : | |

This matter comes before the Court on Defendant Cavendish Farms, Inc.'s Motion to Dismiss Pursuant to Rule 12(c) (doc. 10). For the reasons that follow, the Court finds that venue is inappropriate in the Southern District of Ohio and will **GRANT** the dismissal motion.

I.   PROCEDURAL BACKGROUND

Plaintiff Total Quality Logistics ("TQL") initiated this suit against Defendant Cavendish Farms, Inc. ("Cavendish") in state court. *Total Quality Logistics v. Cavendish Farms*, No. 2009 cvh 377 (Clermont Cty., Ohio C.P. Feb. 19, 2009). TQL provides an Ohio address for itself and a North Dakota address for Cavendish in the caption of the Complaint, but does not otherwise allege the parties' legal citizenships. On March 25, 2009, Cavendish removed the action to this Court on the basis of diversity jurisdiction. Cavendish asserts in the Notice of Removal that it is a Delaware corporation with a principal place of business in North Dakota. (Doc. 1 at 2.) Cavendish filed its Answer the next day.

On September 10, 2009, TQL filed an Amended Complaint with leave of the Court adding Trinity Transport, Inc. and Karriers, Inc. (collectively, "the Trucking Companies") as Defendants. TQL alleges that it entered into an agreement to provide services to Cavendish and

1

that Cavendish owes it money for those services. TQL alleges further that it retained the Trucking Companies to transport goods on behalf of Cavendish and that the Trucking Companies were negligent in their duties.

TQL alleges seven claims in the Amended Complaint:

1. Breach of services agreement against Cavendish;
2. Unjust enrichment against Cavendish;
3. Breach of credit agreement against Cavendish;
4. Negligence against the Trucking Companies;
5. Breach of contract against the Trucking Companies;
6. Breach of warranty against the Trucking Companies; and
7. Violation of the Carmack Amendment against the Trucking Companies.

(Doc. 9.)

Cavendish now moves to dismiss the claims against it on the basis that a forum selection clause precludes this case from being venued in federal court or in Ohio.[1]

## II. LAW GOVERNING RULE 12(b) and 12(c) MOTIONS

Cavendish moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The standard for adjudicating a Rule 12(c) motion is the same as that for adjudicating a Rule 12(b)(6) motion. *Lindsay v. Yates*, 498 F.3d 434, 437 n.5 (6th Cir. 2007). A district court "must read all well-pleaded allegations of the complaint as true." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997). However, this tenant is inapplicable to legal conclusions, or legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).

To withstand a dismissal motion, a complaint "does not need detailed factual

---

[1] Separately, Karriers moves to dismiss the claims against it for failure to state a claim upon which relief can be granted. TQL has filed an untimely memorandum opposing dismissal and a motion to file a second amended complaint. Those motions are not ripe.

allegations," but it must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Court does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563.

## III. ANALYSIS

### A. Contract Between TQL and Cavendish

TQL alleges in the Amended Complaint that it entered into an agreement with Cavendish through which TQL agreed to provide services to Cavendish. Cavendish attached a copy of the parties' written agreement, called the Transportation Agreement (also, "TA"), to its Answer. The Transportation Agreement requires that TQL, as a "Broker" or "Carrier,"[2] provide transportation services to Cavendish, the "Shipper." (TA at 1.) The Transportation Agreement commenced on June 1, 2008 and continued in force for a term of one year, at which time it could have been extended. (*Id.* ¶ 1.1.) A TQL representative signed and initialed each page of the

---

[2] The form language on the Transportation Agreement states that the agreement is between a "Shipper" and a "Carrier" and those terms are used throughout the Transportation Agreement to refer to the obligation of the parties. However, the TQL representative manually crossed out the first instance of the term "Carrier" and wrote that "Broker TQL is a broker." Whether TQL is labeled as a "Carrier" or a "Broker" is immaterial to the adjudication of Cavendish's motion.

Transportation Agreement on June 27, 2008. (*Id.*) It was not signed or initialed by Cavendish.

The Transportation Agreement explicitly incorporates "General Terms and Conditions for the Supply of Services" ("Terms and Conditions"), a copy of which is attached as Exhibit E to the Transportation Agreement. (*Id.* ¶ 8.1.) The Terms and Conditions, likewise, reference that they are part of broader agreement:

> These Terms and Conditions as well as any agreement ("Service Agreement") executed by the supplier (the "Supplier") and the Irving corporation ("Irving") named in such Service Agreement to which these Terms and Conditions are attached (collectively, such Service Agreement and these Terms and Conditions are referred to as the "Agreement"[)] contain all the terms and conditions in relation to the work or services to be performed (collectively, the "Services").

(*Id.*, Ex. E ¶ 1.)

The Terms and Conditions include a forum selection clause:

> The Agreement is to be governed, both with respect to its construction and performance, by the laws of the state or province of the Irving corporation set forth in the Supply Agreement and the parties agree to submit to the exclusive jurisdiction of the courts of such state or province. The parties waive any right to trial by jury.

(*Id.*, Ex. E ¶ 12.) A TQL representative, but not a Cavendish representative, initialed the second page of the Terms and Conditions.

**B.     Enforcement of the Forum Selection Clause**

Cavendish moves for dismissal on the basis of the forum selection clause in the Terms and Conditions incorporated into the Transportation Agreement. Preliminarily, the Court must decide what law to apply to determine the enforceability of the forum selection clause. The Sixth Circuit recently held that the "enforceability of the forum selection clause is governed by federal law" in all diversity jurisdiction suits. *Wong v. PartyGaming Ltd.*, No. 08-4295, — F.3d

4

—, 2009 WL 4893955, at *3 (6th Cir. Dec. 21, 2009).[3] The Sixth Circuit then instructed that "[a] forum selection clause should be upheld absent a strong showing that it should be set aside." *Id.* at *4. Courts in this Circuit consider the following factors when evaluating a forum selection clause:

> (1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust.

*Id.* The party opposing the forum selection clause bears the burden of proof. *Id.*

As to these factors, TQL challenges the forum selection clause only on the basis that it would be inconvenient for it to file the suit in another forum. TQL contends that the presence of the Trucking Companies as additional defendants weighs against dismissal of the action because TQL is unsure whether the courts "of the state or province of the Irving corporation set forth in the Supply Agreement[,]" (TA, Ex. E ¶ 12), would have jurisdiction over the Trucking Companies. TQL asserts that it should not be required to litigate against Cavendish and against the Trucking Companies in two different venues, but it cites no case law to support this contention.

TQL's burden to establish inconvenience is a heavy one. *Wong*, 2009 WL 4893955, at *5. Mere inconvenience is not sufficient. *Id.* Rather, the issue is whether an alternative venue would be "so inconvenient as to, in effect, afford no remedy at all, thus depriving litigants of their day in court." *Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 722 (6th Cir.

---

[3] Previously, the United States Supreme Court had instructed that federal courts, sitting in diversity and analyzing forum selection clauses in the context of a federal statute, should apply federal law to determine the enforceability of the forum selection clause. *Wong*, 2009 WL 4893955, at *2.

2006) (internal quotation and citation omitted). TQL's speculation that it might have to pursue separate law suits against Cavendish and against the Trucking Companies in different venues is not sufficient to meet this heavy burden.

Alternatively, TQL contests the enforceability of the forum selection clause on the basis that Cavendish cannot enforce the Terms and Conditions because the company neither signed the contract nor is named as a party in the contract. As to the first contention, Cavendish did not sign either the Transportation Agreement or the attached and incorporated Terms and Conditions. However, TQL concedes the validity of the Transportation Agreement and has filed this suit to enforce the terms therein. TQL cannot seek to enforce the Transportation Agreement as a valid contract despite the lack of a Cavendish signature while simultaneously challenging the validity of the incorporated Terms and Conditions based on the lack of a signature.

The law supports this common sense analysis. Sixth Circuit held in 1952 that "a contract may be validly entered into even though the written instrument evidencing the terms of said contract has not been executed by the parties." *Hamilton Foundry & Mach. Co. v. Int'l Molder & Foundry Workers of N. Am.*, 193 F.2d 209, 213 (6th Cir. 1951); *see also Allen v. Ford Motor Co.*, 8 F. Supp. 2d 702, 705 (N.D. Ohio 1998) (citing Ohio Jur. 3d § 82 (1980)). The Sixth Circuit precedent is consistent with North Dakota, Delaware, and Ohio law. Under North Dakota law, contracts capable of being performed in one year fall outside the Statute of Frauds and need not be in writing. *In re Lindholm*, 134 F. Supp. 301, 304 (D. N.D. 1955); *see also* N.D. Cent. Code § 9-01-02 (listing the prerequisites of a contract and excluding a requirement that the contact be reduce to a writing). Similarly, under Delaware and Ohio law, the elements of a contract which falls outside the Statute of Frauds are an offer, acceptance, and consideration.

6

*See Chase Manhattan Bank v. Iridium Africa Corp.*, 239 F. Supp. 2d 402 (D. Del. 2002) *aff'd* 294 F. Supp. 2d 624 (D. Del. 2003); *Tersigni v. Gen. Tire, Inc.*, 91 Ohio App. 3d 757, 760, 633 N.E.2d 1140 (1993). If a contract need not be in writing, then it follows that a contract established by an offer, an acceptance, and consideration is not invalid merely because one party did not sign the contract.[4]

TQL's second argument is that Cavendish cannot enforce the Terms and Conditions because it is not specifically named in agreement. Instead, TQL speciously suggests that the contract is between an entity called "Irving Corporation" and an unnamed "Supplier." (Doc. 12 at 2.) In truth, the Terms and Conditions refer to "the supplier (the "Supplier") and *the Irving corporation ("Irving") named* in such Service Agreement to which these Terms and Conditions are attached." (TA, Ex. E ¶ 1 (emphasis added).) Similarly, the forum selection clause states that the parties agree to exclusive jurisdiction of the courts of "the state or province of *the Irving corporation set forth* in the Supply Agreement." (*Id.*, Ex. E ¶ 12 (emphasis added).) The "Service Agreement to which these Terms and Conditions are attached" is the Transportation Agreement between TQL and Cavendish. The "supplier" of services in the Transportation Agreement is TQL. TQL agrees to provide transportation services to Cavendish in the Transportation Agreement. It follows that the "Irving corporation named in the [Transportation

---

[4] TQL's argument would fail even if the contract fell within the Statute of Frauds. The Statute of Fraud requires only that a party against whom a written contract is being enforced must have signed the written contract. *See* N.D. Cent. Code § 9-06-04 ("The following contract[ is] invalid, unless the same . . . is in writing and subscribed by the party to be charged . . . : 1. An agreement that by its terms is not to be performed within a year from the making thereof."); *see also* Del. Code Ann. tit. 6 § 2714(a) (similar provision); Ohio Rev. Code § 1335.05 (similar provision). TQL signed the Transportation Agreement and initialed the incorporated Terms and Conditions. Accordingly, the forum selection clause can be enforced against TQL.

7

Agreement]" is Cavendish. This conclusion that Cavendish is the "Irving corporation named" is bolstered by the fact that the Transportation Agreement provides that all notices and communications to Cavendish are to be sent to both "Cavendish Farms, Inc." in New Brunswick, Canada and to "Irving Group Moneton" in New Brunswick, Canada. (TA ¶ 8.4.)[5]

Based on the foregoing, TQL has not met its heavy burden of establishing that the forum selection clause should be set aside. The Court holds that the forum selection clause is enforceable and that the Southern District of Ohio is not the proper venue for TQL's suit against Cavendish. As to the appropriate remedy, Cavendish asserts that the Court should dismiss the case rather than transfer it pursuant to 28 U.S.C. § 1404.

Section 1404 permits a district court to "transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404. Cavendish persuasively argues that the courts "of the state . . . of the Irving corporation named [*i.e.*, Cavendish]," (TA, Ex. E ¶ 12), should be interpreted to mean only state courts and not federal courts within that state. *See e.g.*, *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081-82 (9th Cir. 2009) (compiling cases that so hold); *Spatz v. Nascone*, 364 F. Supp. 967, 969, 974 (W.D. Pa.1973) (requiring resolution in state court where forum selection clause specified courts of the Commonwealth of Pennsylvania); *cf. Basicomputer Corp. v. Scott*, 973 F.2d 507, 510 (6th Cir. 1992) (citing *Spatz* favorably on that point of law). Further, even if the clause were interpreted to permit filing in the state or federal courts "of the state . . . of the Irving corporation named [*i.e.*, Cavendish],"

---

[5] The Court additionally notes that a quick review of the public website of Cavendish identifies Cavendish as being part of the Irving Group. A copy of the relevant page of the internet site is attached to this Order. *See* <http://www.cavendishfarms.com/Food_Service/Default.aspx?id=1434&ekmensel=c580fa7b_8_152_btnlink>.

TQL as the plaintiff should have the first opportunity to file in the court of its choosing. *See Tritt v. Category 5 Records, LLC*, 570 F. Supp. 2d 977, 980 (M.D. Tenn. 2008) ("Because the contract allows a party to file in any New York court, state or federal court, the Court declines the Defendants' motion to transfer this action to the Southern District of New York."). Accordingly, the Court will not transfer this case to a district court in another venue pursuant to § 1404.

Rather, the Court will examine whether the case should be dismissed pursuant to the doctrine of *forum non conveniens*. The Sixth Circuit held in *Wong* that a court could *sua sponte* raise the issue of *forum non conveniens* to dismiss a case for improper forum when the court had before it facts relevant to the *forum non conveniens* analysis. 2009 WL 4893955, at *6. The Court must determine whether an adequate alternative forum has been identified in which the parties are amenable to process and consider the relevant public and private factors. *Id.* at *6-8. Cavendish suggests that venue would be proper in the courts of North Dakota, where both parties agree that Cavendish operates a place of business. TQL does not and could not credibly deny that the parties—Cavendish and TQL—would be amendable to service of process in North Dakota given their contractual assent to jurisdiction in "the state . . . of the Irving corporation named [*i.e.*, Cavendish]." (TA, Ex. E ¶ 12.)

As to the relevant private and public factors in the *forum non conveniens* analysis — ease of access to sources of proof; availability of compulsory process; court congestion; the interest of having the trial of a diversity case in a forum familiar with the controlling law; and the unfairness of burdening the jury in a forum unrelated to the dispute — there is some overlap with the issue of potential inconvenience to TQL discussed above. *See Estate of Thomson v. Toyota*

*Motor Corp. Worldwide*, 545 F.3d 357, 364 (6th Cir. 2008) (listing private and public factors). TQL has not established that litigating in a different state would create unfair burdens to it in terms of accessing sources of proof or attaining witnesses. Additionally, the factor suggesting an interest in holding the trial in a forum familiar with the controlling law favors dismissal here. The Terms and Conditions provide that the controlling law and the exclusive jurisdiction both lie in "the state . . . of the Irving corporation named [*i.e.,* Cavendish]." (TA, Ex. E ¶ 12.) Likewise, there would be no unfair burden for a jury located within the same state as Cavendish to adjudicate a dispute involving Cavendish. Accordingly, the Court will dismiss for *forum non conveniens*.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Cavendish Farms, Inc.'s Motion to Dismiss Pursuant to Rule 12(c) (doc. 10). TQL's claims against Cavendish are dismissed without prejudice and subject to re-filing in the appropriate venue.

IT IS SO ORDERED.

                                            ___s/Susan J. Dlott_____
                                            Chief Judge Susan J. Dlott
                                            United States District Court